Troy B. Froderman (012717)
Scott C. Ryan (026791)
John F. Barwell (028345)
Richie J. Edwards (035601)
FR LAW GROUP PLLC
4745 N. 7th Street, Suite 310
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
sryan@frlawgroup.com
barwell@frlawgroup.com
redwards@frlawgroup.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Varxity Development Corp., a Canadian corporation, | Case No. 2:21-cv-01216-SPL |
| Plaintiff, | **RESPONSE TO MOTION TO DISMISS** |
| vs. | |
| Town of Payson, an Arizona municipal corporation, | |
| Defendant. | |

Plaintiff, Varxity Development Corp., by and through undersigned counsel, hereby responds to Defendant's Motion to Dismiss. In support, Plaintiff submits the following Memorandum.

## FACTUAL AND PROCEDURAL BACKGROUND

The Parties entered into a Tri-Party Agreement on September 21, 2017 to pursue and accomplish the redevelopment of Rumsey Park, together with the development of a community center, public pool, ice rink complex, athletic training center, and an elite college

1

preparatory academy (collectively "Project"). (Complaint ¶¶ 10-11.) Defendant's execution of the Tri-Party Agreement was ratified and confirmed by a unanimous vote of the Mayor and Town Council. (Complaint ¶ 13.) Relevant to this action, the Parties agreed to "jointly and equally fund the cost of pre-development activities" with contributions of $125,000.00 each. (Complaint ¶¶ 14-15.) The Tri-Party Agreement explicitly mandated that Plaintiff's contribution would be reimbursed when the construction loan closed. (Complaint ¶ 17.) Crucially, the parties agreed to act efficiently and without unnecessary or avoidable delay to accomplish the Project. (Complaint ¶ 19.)

Plaintiff fulfilled its responsibilities under the Tri-Party Agreement and contributed the full $125,000.00 required which allowed for the Project's Master Plan to be completed and delivered to Defendant in April 2018. (Complaint ¶ 16, 20-22.) On May 24, 2018, the Master Plan was approved by the Town Council and fundraising efforts to raise money for the validation phase were approved. (Complaint ¶¶ 25-27.) On or about June 14, 2018, the parties to the Tri-Party Agreement amended that contract to account for donor funding acquired after that time. (Motion to Dismiss, Exhibit 2 ¶ 6.) Defendant continued to act under the Tri-Party Agreement through at least June 2018 before pausing all activity related thereto. (Complaint ¶¶ 28-29.)

Importantly, following its pause on Project related activity, Defendant, on November 29, 2018, passed Resolution 3132 which purports to approve the termination of the Tri-Party Agreement. (Complaint ¶ 31.) The public minutes of the Town Council meeting of that date indicate Defendant's accurate belief that the Tri-Party Agreement remained in full force and effect until the full execution of any termination agreement. *See Exhibit 1* at 8, attached hereto.

2

The parties corresponded intermittently throughout 2019 and into early 2020 as Defendant stated and implied that it was waiting for adequate funding to move forward with the Project under the Tri-Party Agreement. On January 6, 2020, Plaintiff requested that Defendant advise as to what direction it would take with respect to the Project and Tri-Party Agreement. On January 17, 2020, Mr. Aaron Arnson, then counsel for Defendant, emailed Plaintiff and indicated that Defendant had yet to determine its course of action. On February 6, 2020, Mr. Arnson sent a letter to Plaintiff and therein indicated that Defendant saw "no reason…to consider or take action with respect to the Project or the Tri-Party Agreement." *See Exhibit 2*, attached hereto. Mr. Arnson further stated that Defendant saw "no compelling reason to terminate the Tri-Party Agreement and potentially incur substantial costs for doing so." *Id.* Lastly, Mr. Arson confirmed that Defendant was not then terminating the Tri-Party Agreement but that it was open to discussion of a mutual termination. *Id.* at 2. The parties continued in limbo, tethered together by a valid contract, the validity thereof acknowledged by the parties, until March 11, 2021, when Defendant breached the Tri-Party Agreement. (Complaint ¶¶ 35-36.)

## **ARGUMENT**

### I.    **Applicable Legal Standards**

Motion to Dismiss

In deciding a Motion to Dismiss under Rule 12(b)(6), the Court must assume that factual allegations above the speculative level are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Rules require only plausible allegations. *Id.* at 556-57. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

3

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

Notice of Claim and Statute of Limitations

Arizona requires an individual or entity with a claim against a public entity to serve notice of such claim on the public entity "within one hundred eighty days after the cause of action accrues." *A.R.S. § 12-821.01(A)*. Arizona law further provides that any action against a public entity must be "brought within one year after the cause of action accrues." *A.R.S. § 12-821*. The cause of action accrues when the damaged party "realizes he or she has been damaged." *A.R.S. § 12-821.01(B)*; *see also Stulce v. Salt River Project Agricultural Improvement and Power District*, 3 P.3d 1007, ¶ 10 (Ariz. App. 1999) (noting that Arizona courts have applied the common law "discovery rule" to interpret an accrual within statutes of limitations).

## II.     The Tri-Party Agreement remains in full force and effect.

Prior to Defendant's breach on March 11, 2021, the Tri-Party Agreement remained in full force and effect and represented a valid and enduring contract between the parties. The arguments presented in Defendant's Motion to Dismiss turn on the erroneous allegation that the Tri-Party Agreement expired on March 31, 2018. That is simply not the case. By its language, the Tri-Party Agreement sets March 31, 2018 only as a soft deadline by which the third party to the contract needed to provide the Master Plan. Furthermore, even if the Tri-Party Agreement had set March 31, 2018 as a hard expiration date (it does not) the language allows the parties to extend the contract past that date. The parties, both implicitly through their actions and explicitly by agreement, amended the contract after the alleged expiration

date. The timing of such amendment, more than two months after the alleged expiration date, definitively indicates that the Tri-Party Agreement endured after March 31, 2018.

Defendant's Motion to Dismiss fails to recognize that it has acknowledged, in every instance, both through official acts of the Town Council and in communications to Plaintiff, the status of the Tri-Party Agreement as a valid and enduring contract after March 31, 2018. It is undisputed that the third party to the Tri-Party Agreement provided the Master Plan to Defendant in April of 2018, after the alleged expiration date had passed. Upon receipt of the Master Plan, Defendant did **not** claim that it was late or that the contract had expired. Rather, Defendant accepted delivery of the Master Plan and began taking the next required steps to advance the Project under the Tri-Party Agreement.

Specifically, Defendant approved the Master Plan by act of the Town Council on May 24, 2018 (nearly two months after Defendant now, for the first time, alleges that the Tri-Party Agreement expired). Defendant then approved a fundraising agreement to validate the Master Plan and begin the next phase of the Project under the Tri-Party Agreement, again via action of the Town Council. Then, in June 2018, Defendant began fundraising efforts.

Later, after abruptly and unilaterally discontinuing the fundraising efforts, Defendant approved a Resolution calling for the mutual termination of the Tri-Party Agreement on November 29, 2018. This Resolution is obviously without force and effect as it pertains to the validity of the Tri-Party Agreement. By its language and its very nature as a contract between three parties, the Tri-Party Agreement required the consent of **all** parties to effect a valid mutual termination. Defendant could not unilaterally impose a so-called "mutual" termination. The only contractual options available to Defendant were to continue with the Project or incur a penalty for unilateral termination.

5

On January 17, 2020, after continuing conversations with Plaintiff about advancing the Project, Defendant told Plaintiff that it was in the process of determining a course of action under the Tri-Party Agreement. On February 6, 2020, Defendant confirmed the continuing force of the Tri-Party Agreement, in particular the penalty provision for termination, and explicitly declined to terminate the Tri-Party Agreement, preferring to remain in limbo. On the same date, Defendant suggested a mutual termination of the Tri-Party Agreement to avoid related penalties.

Furthermore, by its own language, the Tri-Party Agreement contemplated actions, including penalties, after March 31, 2018. Specifically, the Tri-Party Agreement calls for the reimbursement of Plaintiff's contribution at the funding of the construction loan (Complaint ¶ 17.) The parties knew when they entered the Tri-Party Agreement that such funding would have happened well after March 31, 2018, as that date was only ever intended to be the date on which the Master Plan would be delivered to Defendant.

Incredibly, Defendant, in the interest of arguing that the Tri-Party Agreement somehow expired, ignores that the parties took mutual action to amend the Tri-Party Agreement in June 2018 and extend the life of the same. Exhibit 2 to Defendant's own Motion to Dismiss (Resolution 3132 passed by Defendant's Town Council) apparently relies on an amendment to the Tri-Party Agreement. Specifically, that document indicates that the Town Council had approved, on June 14, 2018, an "Amendment to the Original Agreement." The noted effect of that amendment was to continue the Project and the Tri-Party Agreement past the alleged expiration date, apparently indefinitely, but at least until the validation of the Master Plan was completed.

In short, Defendant repeatedly and unequivocally acknowledged both the validity and continuing force end effect of the Tri-Party Agreement after the alleged expiration date. Had the Tri-Party Agreement expired, as Defendant now argues for the first time, there would have been no need for Defendant to continue evaluating its position and to ultimately suggest a mutual termination to avoid penalty. Defendant never alleged or even suggested that the Tri-Party Agreement had expired on March 31, 2018. Any argument that the Tri-Party Agreement lost force and effect after March 31, 2018 is simply incorrect and such argument, if it had any validity, was unequivocally waived by Defendant.

**III.    The Notice of Claim was timely served in accordance with statute and this action was initiated before the statute of limitations had run.**

Defendant breached the Tri-Party Agreement on March 11, 2021, a fact that Defendant apparently does not dispute in its Motion to Dismiss. Plaintiff served the Notice of Claim on Defendant on April 15, 2021, approximately 35 days after the breach and the earliest date on which the cause of action began to accrue. Defendant ignored the Notice of Claim and the resolution proposed therein. Plaintiff then filed this action on July 13, 2021, approximately 124 days after the earliest date on which the cause of action could have begun to accrue. Plaintiff's actions in delivering its Notice of Claim and filing this action were timely.

Notably, in the Motion to Dismiss, Defendant ignores Plaintiff's specific allegations and focuses on insinuations and irrelevant examples. Specifically, many of Defendant's claims are apparently based on Defendant's own suggestion that it breached the Tri-Party Agreement on November 29, 2018 when it passed Resolution 3132. Though Plaintiff agrees that the passage of Resolution 3132 was an improper, if ineffective, attempt to terminate the Tri-Party Agreement, Plaintiff's claims do not rest on that action.

7

**IV.    Defendant's Motion to Dismiss should be denied.**

Defendant's Motion to Dismiss hinges on convincing this Court to ignore Plaintiff's actual allegations. As described above, Plaintiff alleges that Defendant breached the Tri-Party Agreement on March 11, 2021. There is no colorable argument to be made regarding untimely notices or filings when one considers the date of the actual breach rather than Defendant's contrary insinuations. In deciding Defendant's Motion, this Court must accept as true Plaintiff's allegations that, 1) the Tri-Party Agreement endured after March 31, 2018 and 2) that Defendant breached the same on March 11, 2021. Accepting those allegations, it is clear that the Notice of Claim was timely made and that this matter was timely filed. Plaintiff requests that this Court deny Defendant's Motion for the reasons stated herein.

DATED this 26th day of August 2021.

FR LAW GROUP PLLC


By: /s/ *Troy B. Froderman*

Troy B. Froderman, Esq.
Scott C. Ryan, Esq.
John F. Barwell, Esq.
Richie J. Edwards, Esq.
4745 N. 7th Street, Suite 310
Phoenix, AZ 85014
*Attorneys for Plaintiff*

\\\

\\\

\\\

8

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2021, I electronically transmitted the above document (Response to Motion to Dismiss) to the Clerk's Office using the ECF System for filing and caused a copy to be electronically transmitted to the following ECF registrant:

Kristin M. Mackin
SIMS MACKIN, LTD.
3101 N. Central Ave., Ste. 870
Phoenix, AZ 85012
kmackin@simsmackin.com
*Attorney for Defendant*


/s/ *Richie J. Edwards*