**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Varxity Development Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Town of Payson,<br><br>    Defendant. | No. CV-21-01216-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 38).[1] For the following reasons, the Motion will be granted in part and denied in part.

**I. BACKGROUND**

On or about September 21, 2017, Plaintiff Varxity Development Corporation, Defendant Town of Payson, and a third party ("Community Center Partnership" or "CCP") entered in a contract (the "Tri-Party Agreement" or the "Agreement"). (Doc. 1 ¶ 10). The terms of the Tri-Party Agreement include initiating and facilitating the pre-development activities necessary to begin the "Project". (Doc. 39 at 1–2, ¶ 4; Doc. 41 at 1–2, ¶ 4). The "Project" consisted of "a master plan and revitalization of Rumsey Park, and construction of a community center, aquatic center, ice rink, athletic training center, and college preparatory academy." (Doc. 39 at 2, ¶ 5; Doc. 41 at 2, ¶ 5). To mutually terminate the Tri-

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Party Agreement the terminating party must provide prior written notice and payment of a "Break Up Fee." (Doc. 39 at 2, ¶ 7; Doc. 41 at 4, ¶ 7). By April 2018, both Parties each contributed $125,000 to fund the third party's pre-development work which culminated in "a master plan for the revitalization and development of several new facilities in Rumsey Park" (the "Rumsey Park Master Plan" or the "Master Plan"). (Doc. 39 at 2, ¶¶ 10–12; Doc. 41 at 4, ¶¶ 10–12). The Master Plan provided the Parties with recommendations to implement a risk-neutral financial plan to move the Project forward. (Doc. 39 at 3, ¶ 18; Doc. 41 at 4, ¶ 18). On May 24, 2018, Defendant's Town Council approved the Master Plan, and on June 14, 2018, it approved two resolutions to begin moving forward with the Project. (Doc. 39 at 2–3, ¶¶ 13, 19–21; Doc. 41 at 4, ¶¶ 13, 19–21).

In August 2018, the Town elected a new Mayor and passed two local, voter-enacted propositions (Propositions 401 and 402). (Doc. 39 at 3–4, ¶ 23; Doc. 41 at 5, ¶ 23). Defendant argues that these election results effectively prevented it from moving forward with the Project. (Doc. 39 at 3–4, ¶ 23). On October 3, 2018, Defendant emailed Plaintiff explaining that Defendant's Town Council "voted not to move forward with anything validating the effects of 401 and 402." (Doc. 39 at 4, ¶ 25; Doc. 41 at 5, ¶ 25). Defendant also explained that it was waiting for funds and was unsure if the funds would be available within Plaintiff's timeline. (Doc. 39 at 4, ¶ 26; Doc. 41 at 5, ¶ 26). The third party to the Tri-Party Agreement also "let [Plaintiff] know that [Defendant] had actively stopped looking for funds" to move forward with the Project. (Doc. 39 at 5, ¶ 33; Doc. 39-1 (Ex. 4) at 78–80, 59:24–61:5).

On November 29, 2018, Defendant's Town Council approved Resolution No. 3132, which stated that the Parties desired to terminate the Tri-Party Agreement without the associated termination penalties, despite the fact that Plaintiff had not agreed to such a termination. (Doc. 39 at 4–5, ¶¶ 30–31; Doc. 41 at 5, ¶¶ 30–31). By September 24, 2019, Plaintiff believed that Defendant "broke contract" and that it was "time to settle open contract and walk away" since Defendant showed "no support for the project since the change in leadership." (Doc. 39 at 5, ¶ 32; Doc. 39-1 (Ex. 4) at 86, 70:10–12; Doc. 39-1

(Ex. 18) at 196; Doc. 41 at 5, ¶ 32).

On January 6, 2020, Plaintiff sent a letter to Defendant asking it to provide a progress update and to "terminate [the] agreement in writing and send reimbursement according to the Tri-party agreement" if it did not plan to move forward. (Doc. 39-1 (Ex. 19) at 200; Doc. 39 at 5, ¶ 34; Doc. 41 at 5, ¶ 34). On February 6, 2020, Defendant responded that it saw "no compelling reason to terminate the Tri-Party Agreement and potentially incur substantial costs for doing so" and invited Plaintiff to negotiate a resolution. (Doc. 39-1 (Ex. 20) at 202; Doc. 39 at 5, ¶ 35; Doc. 41 at 6, ¶ 35). On February 9, 2021, Plaintiff responded and alleged that Defendant's February 6, 2020 letter was a "clear anticipatory breach of the Agreement" because Defendant "chose to surreptitiously abandon the Project by shifting the ownness of termination (and all its potential consequences) onto [Plaintiff] through the adoption of a Town Council resolution." (Doc. 39-1 (Ex. 21) at 206; Doc. 39 at 5, ¶ 36; Doc. 41 at 6, ¶ 36). After it received no response from Defendant, Plaintiff sent an additional letter on March 2, 2021 stating the same—including its position "to file litigation" if Defendant refused to pay the Break Up Fee for Defendant's "unilateral termination of the contract by repudiation." (Doc. 39-1 (Ex. 21) at 208; Doc. 39 at 5, ¶ 36; Doc. 41 at 6, ¶ 36).

On April 15, 2021, Plaintiff sent Defendant a Notice of Claim alleging that on March 11, 2021, Defendant "breached and effectively terminated" the Tri-Party Agreement by failing to move forward with the Project and entering "a new development project which substantially mirrors the Rumsey Park Project." (Doc. 39-1 (Ex. 22) at 212; Doc. 39 at 5, ¶ 37; Doc. 41 at 6, ¶ 37). On July 13, 2021, Plaintiff filed its Complaint seeking declaratory relief and damages for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (Doc. 1). On March 3, 2023, Defendant filed the instant Motion for Summary Judgment requesting that this Court grant summary judgment in its favor on each count of the Complaint. The Motion is fully briefed. (Docs. 38, 40, 42).

///

///

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III. DISCUSSION

### a. Statutes of Limitations

Pursuant to A.R.S. § 12-821.01(A), any party with a claim against a public entity must file a notice-of-claim with the public entity within 180 days after the cause of action accrues. Similarly, A.R.S. § 12-821 provides that parties must bring all actions against public entities within one year after the cause of action accrues. For the purpose of both statutes, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). Plaintiff "need not know all the facts underlying a cause of action" because accrual is triggered when Plaintiff possesses at least a "minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)).

To comply with A.R.S. §§ 12-821 and 12-821.01(A), evidence must support a finding that Plaintiff's claims accrued within 180 days of filing its Notice of Claim—no earlier than October 17, 2020—and within one year of filing its Complaint—no earlier than

4

July 13, 2020. Generally, determining whether an action has accrued is a question of fact, however, "[a]ccrual can be decided as a matter of law when 'there is no genuine dispute as to facts showing the plaintiff knew or should have known the basis for the claim.'" *Strojnik v. State ex rel. Brnovich*, No. 1 CA-CV 20-0423, 2021 WL 3051887, at *3 (Ariz. Ct. App. July 20, 2021) (quoting *Humphrey v. State*, 466 P.3d 368, 375 ¶ 25 (Ariz. Ct. App. 2020)). Defendant argues it is entitled to summary judgment for the "claims related to the Town's failure to move the project forward, Resolution 3132, and the February 6, 2020, letter" because Plaintiff knew about these events outside of the limitation period. (Doc. 38 at 5–7).

Under Arizona law, a contract is generally not breached until the date the parties promised to perform has passed. *Aboud v. DeConcini*, 842 P.2d 1328, 1331 (Ariz. Ct. App. 1992) (citation omitted). "However, if one party unequivocally indicates he will not perform when the date arrives, an anticipatory breach is committed." *Id.* The breaching party must do more than merely imply that it will not perform—rather, it must demonstrate a "positive and unequivocal refusal to perform." *McMahon v. Fiberglass Fabricators, Inc.*, 496 P.2d 616, 618 (Ariz. Ct. App. 1972). In anticipatory repudiation cases, the claim does not accrue until the date on which performance is due unless the aggrieved party elects to sue earlier. *Shumway v. DHL Express (USA), Inc.*, No. CV 06-1188-PHX-DKD, 2008 WL 11338792, at *7 (D. Ariz. Sept. 29, 2008) (citation omitted).

On November 29, 2018, the Town indicated that it was terminating the Tri-Party Agreement by approving Resolution No. 3132, which stated in part:

> A Resolution of the Mayor and Council of the Town of Payson, Arizona, approving and authorizing the general release of all claims and release of documents and confidentiality agreements between the Town of Payson, Arizona ("Town"), Community Centers Partners, LLC ("CCP"), and Varxity Development Corporation ("VDC") (collectively, the "Parties")
>
> …
>
> Whereas, the Parties desire to reach a mutually beneficial option to terminate the existing Agreements between each other without any Party having to reimburse any other Party

5

> for so exercising their right to terminate upon providing an executed general release of all claims and release of documents and confidentiality agreements to the other Parties; and
>
> Whereas, the Town agrees to approve and adopt the general release of all claims and release of documents and confidentiality agreements to terminate the Joint Planning, Development, Validation and Implementation Strategy with CCP, the Friends of Payson Parks and Recreation ("501 [c]3"), the Special Purpose Entity ["63-20"] and VDC as contemplated to explore various Economic and Recreational opportunities.
>
> …
>
> Section 1: That the general release of all claims and release of documents and confidentiality agreements is hereby approved and adopted . . . .
>
> …
>
> This agreement is entered into effective the 29th day of November, 2018 between the Town of Payson, Arizona ("Town"), Community Center Partners, LLC ("CCP") and Varxity Development Corporation ("VDC"), for the purposes of resolving all claims and disputes between the parties related to all agreements entered into between the parties, involving master planning of and redevelopment of Rumsey Park in Payson, Arizona (the "Project"), including all resolutions enacted by the Town in furtherance of that Project (the "Agreements").

(Doc. 39-1 (Ex. 17) at 188–194) (modified to remove capitalization and bolding). The Town passed the Resolution, despite not receiving Plaintiff's approval or signature. (Doc. 39 at 5, ¶ 31; Doc. 41 at 5, ¶ 31; Doc. 38 at 4). Additionally, on February 6, 2020, Defendant sent Plaintiff a letter stating that "[f]rom the Town's perspective, unless and until funding levels under the Friends Agreement are reached, *there is no reason for the Council to consider or take action with respect to the Project or the Tri-Party Agreement*." (Doc. 39-1 (Ex. 20) at 202) (emphasis added). More importantly, Defendant agrees that "[t]he Town's November 29, 2018 resolution demonstrated its intent to not move forward with the Project in the Rumsey Park Master Plan." (Doc. 42 at 2). In sum, Defendant's actions gave rise to an anticipatory repudiation claim because it unequivocally indicated Defendant's intentions to abandon the contract and not perform any further. *Trudel v. Am. Fam. Mut. Ins. Co.*, No. CV-12-1208-PHX-SMM, 2014 WL 4053405, at *6 (D. Ariz. Aug.

15, 2014) ("Anticipatory repudiation is a species of contract breach in which the offending party states that it will not render the promised performance when the time fixed for it in the contract arrives.") (internal quotation and citation omitted).

The evidence supports a finding that Plaintiff knew it had a claim against Defendant for anticipatory repudiation by at least September 24, 2019. On that date, Lane Moore, Plaintiff's Chief Executive Officer, specifically indicated in an email that he believed Defendant "broke contract." (Doc. 39-1 (Ex. 18) at 196). This was later corroborated by his deposition:

> Q.   . . . But the first email at the top, it says from Greg Eagleburger to Lee Ploszaj and cc to Larry Allen. It's dated *September 24th of 2019*, and it's forwarding an email from you to Greg Eagleburger dated the same day, just a little bit earlier. And if you want to take a quick look at that, let me know if you recall sending that email.
>
> A.   Yeah. I vaguely remember it, yep.
>
> Q.   And the last sentence states that: My take is they broke contract and time to settle open contract and walk away. To what contract are you referring there?
>
> A.   I'm talking about the Tri-Party Agreement.
>
> Q.   And the "they" in that sentence, are you referring to the Town?
>
> A.   Yes.
>
> Q.   *And so at that point you thought the Town had broken the Tri-Party -- or breached the Tri-Party Agreement; is that correct?*
>
> A.   *Yes.*

(Doc. 39-1 (Ex. 4) at 86 (emphasis added)). This belief was echoed in its January 6, 2020 letter, in which Plaintiff requested Defendant "terminate [the] agreement in writing and send reimbursement according to the Tri-party agreement." (Doc. 39-1 (Ex. 19) at 200). Finally, on February 9, 2021, Plaintiff responded to Defendant's February 6, 2020 letter and further indicated that Defendant "surreptitiously abandon[ed] the Project" by adopting Resolution No. 3132. (Doc. 39-1 (Ex. 21) at 206). Plaintiff described Defendant's actions

as "[n]ot only . . . a breach of the covenant of good faith and fair dealing, but . . . also *a clear anticipatory breach of the Agreement*." (*Id.*). Accordingly, upon review, the Court finds the evidence clearly supports a finding that Plaintiff knew it had claims for anticipatory repudiation outside of the limitation period. Plaintiff, however, had the option to bring the anticipatory repudiation claims immediately or wait until the date the Parties agreed to perform. Plaintiff also had the option to wait until it was clear that Defendant breached and effectively terminated the contract. *See e.g. Holm v. CalEnergy Co.*, 229 F.3d 1157 (9th Cir. 2000). Thus, the Court rejects Defendant's argument that Plaintiff's claims related to Defendant's failure to move forward, Resolution No. 3132, and the February 6, 2020 letter are barred by the statute of limitations.

### b. Breach of Contract

"To state a cause of action for breach of contract, the Plaintiff must plead facts alleging (1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 964 (D. Ariz. 2021) (internal citations omitted). The Parties do not dispute the overall existence of the Agreement, but Defendant argues that Plaintiff cannot, as a matter of law, establish the breach or damages elements. More specifically, Defendant argues that pursuant to the terms of the Agreement, it did not have to move forward with the Project and was not restricted from negotiating with third parties. It also argues that Plaintiff is not entitled to damages because the Agreement expired prior to the alleged breach and its claim for lost profits is too speculative.

#### i. Failing to Move Forward With the Project

In Arizona, "the interpretation of a negotiated agreement is not limited to the words set forth in the document." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 398 (Ariz. 1984). When parties disagree about the scope of the contract, "it is fundamental that a court attempt to ascertain and give effect to the intention of the parties at the time the contract was made if at all possible." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1139 (Ariz. 1993) (citation and quotation omitted). The Court may

consider evidence on "surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like" to determine the parties' intent regarding integration of the agreement. *Darner Motor Sales, Inc.*, 682 P.2d at 398. "As long as the evidence is 'not being offered to contradict or vary the meaning of the agreement' the evidence does not violate Arizona's parol evidence rule and may be admitted." *Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC*, No. CV-17-04597-PHX-SMM, 2021 WL 9597845, at *6 (D. Ariz. Mar. 17, 2021) (quoting *Taylor*, 854 P.2d at 1140)). "If the court finds that the 'language of the agreement, illuminated by the surrounding circumstances, indicates that either of the interpretations offered [is] reasonable' then the controversy over interpretation must be submitted to the jury." *Id.* (quoting *Taylor*, 854 P.2d at 1145).

Defendant describes that Tri-Party Agreement as "a six-month consulting services agreement for ***Pre***-Development Activities." (Doc. 38 at 8) (emphasis in original). Moreover, Defendant asserts that the Parties intended the Agreement to be "limited to *pre-development activities to explore the feasibility of the Project.*" (Doc. 38 at 8–9) (emphasis in original). Defendant's Motion included the following quotes from the Tri-Party Agreement to support its argument that the Parties never intended to move forward with the Project:

> Section 1: "[t]his Agreement has been exclusively authored for the Town of Payson Leadership **to consider** a Public-Private Partnership inclusive of an updated and enhanced master plan for Rumsey Park, Taylor Pool and the new Academy." (Emphasis added.)
>
> Section 2: "This Consulting Services Agreement covers Pre-Development Activities."
>
> Section 6(B): The Parties "agree ***not-to-exceed*** Pre-Development Budget for the ***Pre***-Development Activities defined herein . . .."
>
> Section 6(H): "At the end of the Pre-Development Activities, ***should*** the Parties accept the Development program . . .CCP will then be directly appointed as the Master Developer . . . under a ***separate*** Master Development Agreement(s) ***to be negotiated***" by the parties to include "***negotiated*** incentives ***contemplated*** in Exhibit E." (Emphasis added.)

9

> Exhibit E: "***Menu*** of ***proposed*** Economic Incentives." (Emphasis added.)
>
> Section 7(E): "***If***, and when, financing is put into place to construct any element of the Project as contemplated, ***and*** Pre-Development costs are included in said Project's budget, the amount paid by Town and [Varxity] in support of this Agreement ***may*** be fully reimbursed from such funding." (Emphasis added.)

(Doc. 38 at 9 quoting Doc. 39-1 (Ex. 2)). Plaintiff disputes that the Agreement was limited to pre-development activities. Plaintiff argues that up until it served Defendant its Notice of Claim, the Parties both understood that the Agreement required them to move forward and construct the Project. (Doc. 40 at 8). Plaintiff has offered extrinsic evidence to support this understanding. Prior to reviewing this evidence, however, the Court will review whether the Agreement supports this interpretation. *See Terrell v. Torres*, 456 P.3d 13, 16 (Ariz. 2020), *as amended* (Feb. 21, 2020). First, the Agreement's recitals announced the Parties' desire to move forward with the Project:

> WHEREAS, TOWN, VDC and CCP have **discussed moving forward together in a Public-Private Partnership arrangement** to create a risk-neutral Community Center Partnership Plan to be used as the foundation for securing private financing for the venture, and;
>
> WHEREAS, TOWN, VDC and CCP **desire to now proceed with a strategic pre-development process** of discovery, feasibility and definition governed by collaborative, scheduled workshops which will **uncover the development activities required to advance the Project on an acceptable timeline**; and . . . .

(Doc. 39-1 (Ex. 2) at 11) (emphasis added). Moreover, the Agreement states:

> Section 6(B): It is the intent of the Parties that the Pre-Development Budget **shall be included in the overall Total Development Budget**, and is contemplated that **the Parties shall be reimbursed** the cost of Pre-Development Activities at funding of the construction loan.

(*Id.* at 15) (emphasis added). This language shows that the Parties intended to do more than draft a pre-development plan. Additionally, the Agreement provides that executing and furthering the planning of the Project was one of the Parties' fundamental goals:

> Section 6(F): A **fundamental goal** of VDC and TOWN is to reduce the time and cost required for the design and construction of the Project and obtain best value within the scope and intended expectations of VDC and TOWN. TOWN, VDC and CCP acknowledge that open communication and responsive decision making **are critical for the successful execution of the Project in a compressed time frame**. VDC, TOWN and CCP understand the need for a collaborative process featuring simple, direct, and clear communication between the Parties. **TOWN and VDC acknowledges that time is of the essence *in furthering the planning* of the Project**. CCP will rely on each decision made by the Parties and that any delay in making decisions and/or reversals of prior decisions will likely have an adverse impact on the schedule for the Project. . . .

(*Id.* at 16) (emphasis added). Accordingly, upon review of the entire Tri-Party Agreement, it is not clear on its face whether the Parties intended to limit the Agreement to pre-development planning and not move forward with the Project.

Evidence revealing the Parties' subsequent conduct supports that the Parties intended to continue with moving the Project forward. The Parties exchanged multiple communications discussing their plans to move forward with the Project. In July 2018, Plaintiff sent Defendant a letter acknowledging that Defendant formally approved the Master Plan and was "moving forward with this vital first phase." (Doc. 39-1 (Ex. 11) at 169). Plaintiff also expressed that it was doing its part to "mov[e] forward with [the] plans." (*Id.*). In October 2018, Defendant explained that "[t]he Town [was] waiting for the funds to be received from the Friends of Payson Parks and Recreation to move forward with the validation per the current plan." (Doc. 39-1 (Ex. 13) at 174). However, by November 29, 2018, Defendant approved Resolution No. 3132, and formally announced it was no longer moving forward with the Project.[2] (*See* Doc. 42 at 2). As both Parties' interpretations of the Agreement are reasonable, the question of whether the Parties intended to move forward with the Project is a question of fact for the jury. *See Taylor*, 854 P.2d at 1145.

---

[2] As discussed earlier, the adoption of Resolution No. 3132 was an anticipatory breach. However, the Court does not agree with Plaintiff's argument that the Resolution amended the Tri-Party Agreement.

Thus, the Court may not conclude as a matter of law that Defendant did not breach the Agreement by not moving the Project forward.

### ii. Substantially Similar Project Negotiations

Defendant also challenges Plaintiff's claim that Defendant breached the Agreement by entering a Memorandum of Understanding ("MOU") with the Rim Country Educational Alliance (the "RCEA"). On May 13, 2021, the Town approved entering a non-binding MOU for the "initial planning for development of certain Improvements on the Property by RCEA, and subsequent potential operation of such Improvements by the Town." (Doc. 39-1 (Ex. 24) at 220). The Parties agree that the terms of the Tri-Party Agreement do not prohibit them from negotiating with third parties. (*See* Doc. 39 at 6–7, ¶ 48; Doc. 41 at 6, ¶ 48). Defendant relies on this undisputed fact to argue that it did not breach the Agreement by entering a MOU with the RCEA. However, Plaintiff's allegations extend beyond negotiating with third parties. Plaintiff alleges that Defendant is liable for breach of contract because it abandoned the Agreement to enter "a new developmental agreement substantially mirroring the Project." (Doc. 1 at 5, ¶ 39). The MOU included anticipated plans to construct an office space, a swimming pool, and a multipurpose fitness center. (Doc. 39-1 (Ex. 24) at 220). It also listed "outdoor park amenities to include shade ramadas, a multipurpose field or fields, pickleball courts, and nature trail, as well as baseball or softball field(s) . . . ." (*Id.*). Whereas the Project includes plans to construct "a community center, aquatic center, ice rink, athletic training center, and college preparatory academy." (Doc. 39 at 2, ¶ 5; Doc. 41 at 2, ¶ 5). There is a genuine dispute about whether these plans are substantially similar projects. *See Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 (D. Ariz. 2018) ("A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence."). Accordingly, whether Defendant breached the contract by abandoning the Agreement and entering a MOU to plan a substantially similar project is a question of fact for the jury to decide.

///

### iii. Damages

Finally, Defendant argues that Plaintiff's breach of contract claims cannot survive its Motion for Summary Judgment because Plaintiff cannot establish damages. The Parties dispute whether Plaintiff may recover damages from the Break Up Fee and lost-profits.

### 1. Break Up Fee

Section 9(b) of the Tri-Party Agreement provides that Defendant must pay a Break Up Fee if it chooses to terminate the Agreement:

> Should TOWN exercise the right to terminate this Agreement, the monetary investment made by VDC will be protected by a "Break Up Fee." Upon termination of this Agreement by TOWN, TOWN will remit to VDC this Break Up Fee; which shall be defined as all monies VDC has invested in this Agreement up to the date of termination, plus an interest rate return equal to eight percent (8%) per annum.

(Doc. 39-1 (Ex. 2) at 19). Defendant argues that the Break Up Fee is not enforceable because the Agreement expired—and "the 'right to terminate' must be exercised *before* the agreement expires." (Doc. 38 at 13) (emphasis in original). Section 2 of the Tri-Party Agreement provides that "*CCP* shall use commercially reasonable efforts to provide TOWN and VDC all deliverables for the *Pre-Development Activities* . . . on or before the Expiration Date." (Doc. 39-1 (Ex. 2) at 12). (emphasis added). The expiration date listed for completing pre-development activities is March 31, 2018. (*Id.*). The Agreement does not provide an expiration date or a deadline for moving forward with the Project. So while the Agreement provided a timeline for completing pre-development activities, it is unclear how long the Parties had to move the Project forward. Nevertheless, Plaintiff has provided evidence to show that the promise to move forward with the Project did not expire on March 31, 2018. (*See* Doc. 40 at 2–4). In fact, the record is littered with correspondence between the Parties discussing the Tri-Party Agreement as though it remained active. (*See Id.*). Therefore, the Court rejects Defendant's argument that, as a matter of law, Plaintiff is not entitled to the Break Up Fee because the Agreement is expired.

///

### 2. Lost Profits

The Parties dispute whether Plaintiff has established that it is entitled to damages for lost profits as a matter of law. The Court finds that Plaintiff has failed to put forth sufficient evidence to show that the damages related to lost profits was foreseeable. *Indie Caps LLC v. Ackerman*, No. CV-20-01970-PHX-DJH, 2023 WL 5206136, at *4 (D. Ariz. Aug. 14, 2023) ("The plaintiff's evidence in these cases 'should supply some reasonable basis for computing the amount of damage and must do so with such precision as [] possible.'" (quoting *Gilmore v. Cohen*, 386 P.2d 81, 83 (Ariz. 1963)). The Court, therefore, denies Defendant's Motion with respect Plaintiff's breach of contract claim, but grants the Motion with respect to any damages due to lost profits. For the reasons mentioned above, the Court also denies Defendant's Motion with respect to Plaintiff's claims for Breach of Covenant of Good Faith and Fair Dealing and Declaratory Relief.

### c. Unjust Enrichment

Plaintiff's only remaining claim is that Defendant was unjustly enriched when it abandoned the Agreement after receiving the completed Rumsey Park Master Plan. (Doc. 1). The Court finds this claim fails as a matter of law because "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Indep. Excavating Inc. v. 339 Wilson St. Equip. LLC*, No. CV-19-08269-PCT-DLR, 2020 WL 4284382, at *4 (D. Ariz. July 27, 2020) (quoting *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)). Thus, the Court grants Defendant's Motion with respect to Plaintiff's unjust enrichment claim.

### IV. CONCLUSION

In sum, Plaintiff's claims are not barred by the statutes of limitation. However, Plaintiff's claims for lost profits and unjust enrichment fail as a matter of law. The remaining claims must be resolved at trial by a finder of fact. Therefore, the Court denies Defendant's Motion with respect to those claims.

///

///

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 38) is **granted** in part and **denied** in part. Plaintiff's claims for lost profits and unjust enrichment are dismissed. All other claims remain at issue.

Dated this 27th day of October, 2023.

Honorable Steven P. Logan
United States District Judge